# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) |
| Plaintiff, | ) ) **COMPLAINT** |
| vs. | ) ) ) ) ) |
| **DANIEL JOSEPH MCKAY** Defendant. | ) ) ) |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Daniel Joseph McKay ("McKay") alleges as follows:

## OVERVIEW

1. This matter involves insider trading in the securities of Triangle Pharmaceuticals, Inc. ("Triangle") by McKay.

2. During the fall of 2002, McKay misappropriated material, nonpublic information from his wife, an Executive Vice President of Triangle, relating to a proposed acquisition offer for all outstanding shares of Triangle stock from Vertex Pharmaceuticals, Inc. ("Vertex").

3. After obtaining this material, nonpublic information, and before Triangle announced that it was being acquired, McKay purchased Triangle stock and conveyed this material, nonpublic information to two of his siblings, who purchased Triangle stock shortly thereafter.

4. As a result of their actions, McKay and his siblings obtained illicit profits and gains in the amount of $11,416.

5. Through his conduct, McKay has engaged in and, unless restrained and enjoined by this Court, will continue to engage in acts and practices which constitute and will constitute violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action under Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), 78u-1 and 78aa].

7. Venue for this action is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. 1391(b)(1) and (2) and Section 27 of the Exchange Act [15 U.S.C. 78aa] because certain of the actions set forth herein that constitute violations of the Exchange Act occurred within the Eastern District of North Carolina and because McKay resides in the District.

## THE DEFENDANT

8. **McKay**, 53, is a resident of Creedmoor, North Carolina. He is a sales representative for a meat flavoring company.

## THE COMPANY

9. **Triangle** was a pharmaceutical company located in Raleigh, North Carolina. During the relevant time, McKay was married to an Executive Vice President of Triangle.

## STATEMENT OF FACTS

10. In the fall of 2002, Triangle engaged Banc of America Securities, LLC to seek merger or acquisition offers for the company.

11. During this same period, Triangle employed McKay's wife as an Executive Vice President who received confidential, nonpublic information about Triangle, including information about the acquisition offers the company received and its merger discussions. Specifically, her responsibilities included reviewing, evaluating and advising Triangle's Board of Directors on merger or acquisition offers that the company received. During the relevant period, McKay's wife regularly brought documents from Triangle to the home she shared with McKay and left them unattended in the dining room, where McKay could access them.

12. McKay was generally aware of his wife's position at Triangle and that, in the course of her employment with the company, she had access to material, nonpublic information. McKay knew that his wife was an insider and that he was

not authorized to trade in the securities of Triangle based on information regarding a potential merger that he obtained from his wife, or to tip others as to information regarding a potential merger that he obtained from his wife.

13. On Friday, October 17, 2002, Triangle received an acquisition offer from Vertex to purchase all outstanding shares of Triangle stock.

14. No later than October 28, 2002, Triangle's senior managers, including McKay's wife, were aware of the Vertex offer made on October 17, 2002, and held a meeting to evaluate the acquisition offer.

15. On or before October 29, 2002, McKay misappropriated nonpublic, material information from his wife pertaining to the acquisition offer Triangle received from Vertex.

16. On October 29, 2002, while in possession of, and reliance upon, the material, nonpublic information pertaining to the Vertex acquisition offer, McKay purchased 3,750 shares of Triangle stock for $12,905.

17. On November 1, 2002, Triangle received a tender offer to acquire outstanding Triangle stock from a second company, Gilead Sciences, Inc. ("Gilead").

18. On November 3, 2002, McKay telephoned his parents' house, where his sister was temporarily residing, and tipped her material, nonpublic information about Triangle's merger negotiations. The following day, McKay's sister opened a

brokerage account with a broker-dealer with whom she had no previous affiliation and purchased 500 shares of Triangle stock for $1,850.

19. On November 14, 2002, at 9:43 a.m., McKay called his brother and tipped him material, nonpublic information about Triangle's merger negotiations. Approximately seventeen minutes after speaking with McKay, McKay's brother purchased 500 shares of Triangle stock for $1,671.

20. On December 3, 2002, after several weeks of negotiations, Triangle's Board of Directors held a meeting and approved Gilead's tender offer.

21. The following day, on December 4, 2002, before the stock market opened, Triangle made a public announcement stating that it had accepted a tender offer from Gilead. The price of Triangle's stock closed that day at $5.82, representing an increase of $1.32, or 29 percent above the price of the company's stock at the close of the stock market on the preceding day. Additionally, 31,036,852 shares of Triangle's stock traded on December 4, 2002, representing an increase of 10,311 percent from the previous day's trading volume.

22. The same day, McKay's brother sold the 500 shares of Triangle stock that he had previously purchased on November 14, 2002, resulting in a profit of $1,234.

23. On December 12, 2002, in order to conceal his purchases from his wife, who might have learned of the purchases from the shareholders voting material

that would be sent to his home, McKay sold the 3,750 shares of Triangle stock that he purchased on October 29, 2002, generating a profit of $9,032.

24. On January 24, 2003, McKay's sister sold the 500 shares of Triangle stock that she purchased on November 3, 2002, resulting in a profit of $1,150.

25. Due to their relationship as husband and wife, McKay owed a duty of trust and confidence to his wife not to trade on or disclose any material, nonpublic information about Triangle that he obtained from her either directly in conversations between the two or indirectly by reviewing confidential documents that she left unattended in their home.

26. Notwithstanding the foregoing, McKay obtained material, nonpublic information about Vertex's acquisition offer made to Triangle directly or indirectly from his wife and, while in possession of such information, purchased and caused his siblings to purchase Triangle stock. McKay knew, or should have known, that by tipping his siblings with information about the Vertex acquisition offer, it was foreseeable that they would use this material, nonpublic information to purchase Triangle stock.

27. As a result of his conduct, McKay breached the duty of trust and confidence owed to his wife, a Triangle insider.

28. By engaging in the aforementioned conduct, McKay obtained both direct and indirect benefits by purchasing and causing others to purchase Triangle stock based upon material, nonpublic information about the Vertex acquisition offer.

## COUNT I

### Violations of Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5]

29. Paragraphs 1 through 28 are hereby realleged and are incorporated herein by reference.

30. McKay, during 2002, singly or in concert, in connection with the purchase and sale of securities, directly and indirectly, by the use of means and instrumentalities of interstate commerce and by use of the mails:

 (a) employed devices, schemes, and artifices to defraud;

 (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or

 (c) engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon persons, in connection with the purchase and sale of such securities,

all as more particularly described above.

31. McKay knowingly, intentionally and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business. In engaging in such conduct, the Defendant acted with scienter, that is, with an intent to deceive, manipulate or defraud or with a severe reckless disregard of the fact that (a) his trading activity was based upon material non-public information, and (b) in trading he was (i) breaching a fiduciary relationship or other relationship of trust or confidence, or (ii) had received the information from someone breaching such a duty.

32. By reason of the foregoing, McKay violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully prays that the Court:

I.

Issue a permanent injunction enjoining McKay, and his agents, servants, employees, attorneys, and all persons in active concert or participation with him who receive actual notice of the order by personal service or otherwise, and each of them, from violating Exchange Act Section 10(b) [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

II.

Issue an Order requiring McKay to disgorge all profits made in connection with the purchase and sale of Triangle stock that he made, or caused others to make, while in possession of material, nonpublic information as alleged in the Commission's Complaint, plus pay prejudgment interest thereon.

III.

Issue an Order pursuant to Section 21A of the Exchange Act [15 U.S.C. 78u-1] imposing a civil monetary penalty against McKay.

IV.

Retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may have been entered or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Grant such other relief as may be necessary and appropriate.

This 27th day of September, 2007,

    Respectfully submitted,

    /S/ Alex Rue
    _____

    Alex Rue
    Georgia Bar No. 618950

    William P. Hicks
    Georgia Bar No. 351649

    Mark Eric Harrison
    Mass. Bar No. 640487

    Attorneys for Plaintiff
    United States Securities and Exchange Commission
    Atlanta Regional Office
    3475 Lenox Road, N.E., Suite 500
    Atlanta, Georgia 30326-1232
    (404) 842-7600
    Fax: (404) 842-7633